```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

**WALTER F. WEISSEG**,

        Plaintiff,

vs.                                **Case No. 8:04-CV-2169-T-24EAJ**

**JO ANNE B. BARNHART**
**Commissioner of Social Security**,

        Defendant.
_____/

## ORDER

Plaintiff brings this action pursuant to the Social Security Act (the Act) as amended, Title 42, United States Code, Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying his claim for a period of disability and Disability Insurance Benefits (DIB) under the Act.  Plaintiff also has filed a Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence.  (Dkt. 13).

The undersigned has reviewed the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, and the pleadings and memoranda submitted by the parties in this case.[1]

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Dkt. 5).

substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded to the Commissioner for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

**I.**

Plaintiff filed his current application for DIB on December 12, 2001, with an alleged onset of disability of September 17, 2001. (T 20-21) Plaintiff claims disability due to osteoarthritis, headaches, poor vision, neck and back problems, bilateral carpal tunnel syndrome, seizures, and depression. (T 21) Plaintiff was 48 years old at the time of the hearing with a high school education. (T 29, 356) For twelve years before his alleged disability onset,

Plaintiff worked as a building maintenance worker and, before that, as a house cleaner. (T 28, 358) At the time of the hearing, Plaintiff's sole source of income was state retirement disability benefits, which he began receiving in December of 2001. (T 27, 357) Plaintiff also settled a Workers' Compensation claim for around $15,000 for an on-the-job back injury he incurred while performing plumbing work. (T 27, 361)

Plaintiff's application for DIB was denied on January 25, 2002, and also was denied on reconsideration. (T 33, 46) Thereafter, a hearing was held before the ALJ on March 20, 2002. (T 353) In his decision denying benefits, the ALJ found that Plaintiff had osteoarthritis and bilateral carpel tunnel syndrome, impairments considered "severe," but not severe enough to meet or medically equal one of the listed impairments. (T 24) The ALJ further found that the claimant's seizures, headaches, vision problems, sleep apnea, and depression do not represent "severe" impairments and that these ailments result in only slight limitations having minimal effect on Plaintiff's ability to work. (T 25)

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the onset of his alleged disability and that Plaintiff is unable to perform any of his past relevant work. (T 30) However, the ALJ did not find Plaintiff's testimony regarding his medical condition wholly credible because the objective medical

evidence did not support the severity of Plaintiff's limitations. (T 30)  The ALJ concluded that, although Plaintiff's exertional limitations do not allow him to perform a full range of light work, Plaintiff has the ability to perform a restricted range of light work. (T 28) Specifically, the ALJ determined that Plaintiff has the ability to "lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently" and "is able to sit, stand or walk for 6 hours out of an 8-hour day, and must alternate positions at will." (T 28, 30) The ALJ further determined that Plaintiff "is limited to no repetitive bending, stooping or crouching," and "...must avoid unprotected heights, balancing and dangerous moving machinery." (Id.)  The ALJ credited the testimony of a vocational expert that there are a significant number of jobs in the national economy that Plaintiff could perform including production assembler, wrapper or packer, or cashier  (T 28, 30) The ALJ therefore determined that Plaintiff is not disabled. (T  31)

Plaintiff alleges that the ALJ erred by (1) disregarding the state's disability determination; (2) failing to consider the combined effects of all his impairments, both severe and non-severe; and (3) failing to accord Plaintiff's treating sources substantial weight (Dkt. 11).  However, the issues have been reordered by the court as necessary to facilitate a logical flow in the court's analysis especially in light of the sequential requirements for establishing disability under the Social Security

4

Act.

Additionally, Plaintiff's Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence (Dkt. 13) asserts the argument that the record should be supplemented to include medical records obtained after the ALJ issued his final decision. Plaintiff claims that these additional records demonstrate that his depression is a severe impairment.

The medical evidence has been summarized in the decision of the ALJ and will not be repeated here except as necessary to address the issues presented.

## II.

**A.** Plaintiff argues that the ALJ disregarded the state's disability determination and did not consider it as evidence supporting Plaintiff's claim that he cannot perform substantial gainful activity. (Dkt. 11 at 21).

The findings of disability by another agency, although not binding on the Secretary, are entitled to great weight. Falcon v. Heckler, 732 F.2d 827, 831 (11th Cir. 1984) (citing Bloodsworth, 703 F.2d at 1241). The Falcon court held that because the definitions of disability for both Florida's worker's compensation and for social security have been interpreted by the Florida Supreme Court to operate similarly, the ALJ erred in not giving great weight to the Florida agency's finding of total disability. Id. at 831, citing Port Everglades Terminal Co. v. Canty, 120 So.2d

596 (Fla. 1960).

It is true that a determination of disability by another agency, whether it be the Florida Division of Workers' Compensation or another entity, is not absolutely binding on the Commissioner as set forth in the regulations:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504.

Plaintiff's argument on this issue is persuasive. The ALJ's decision states: "[T]he undersigned concludes that the determinations made by Worker's Compensation and the State of Florida that the claimant is disabled is [sic] not binding." (T 27)

It is clear that the ALJ did not analyze the Florida agency's final disability determination under the applicable standard. In fact, a review of the record reveals that the state's disability determination is not in the record. Therefore, the ALJ did not give great weight to Florida's disability determination as required by Falcon, 732 F.2d at 831, and this court is unable to determine whether the ALJ's rejection of this evidence is supported by substantial evidence. A remand is required to enable the Commissioner to fully develop the record by obtaining copies of the state's disability determination (and any other disability

6

determination by another agency if there are others for the applicable period of time) before reaching any final conclusion regarding whether Plaintiff is disabled under the Act.

**B.** Second, Plaintiff argues that the ALJ erred in the standard used to determine that Plaintiff's seizures, vision problems, and depression are not severe impairments. Plaintiff also submits that the Commissioner did not consider the combined effect of all his impairments, both severe and non-severe, as required by Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) and other cases.

It is well settled that an impairment can be found non-severe under the Act "only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)

The severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986).

Further, the ALJ must consider each alleged impairment and "state the weight accorded [to] each item of impairment evidence and the reasons for his decisions on such evidence." Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986). In addition, the ALJ

must explain whether the impairments are severe by themselves and in combination. Id. The combined effect of impairments must be considered even if any of the impairments considered separately are not "severe". Hudson, 755 F.2d at 785-86. The failure to comply with these requirements results in a remand. Gibson, 779 F.2d at 623.

However, the language used by the Commissioner may be sufficient to infer that the impairments were considered in combination. See, e.g., Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986).

Plaintiff's second argument is without merit. As the ALJ noted in his decision, if "the regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis." (T 21-22) The ALJ noted that "the medical evidence does not contain the requisite clinical laboratory findings to show that [Plaintiff] has any impairment or combination of impairments that meet the criteria of any listed impairment." (T 24) In the findings, the ALJ found Plaintiff has a "combination of impairments considered 'severe' based on the requirements in the regulations at 20 C.F.R. § 404.1520(b)." (T 30) He also found that "these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No.4." (Id.) These statements reflect consideration of Plaintiff's

impairments in combination. See Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002). Therefore, the ALJ's decision as to this issue is affirmed. The ALJ also used the proper standard to evaluate the severity of Plaintiff's alleged impairments.[2]

**C.** Third, Plaintiff alleges that the ALJ failed to give proper weight to the opinions of Plaintiff's treating physicians, and instead relied on the opinions of two non-examining physicians in determining Plaintiff's residual functional capacity (RFC).(Dkt. 11 at 21).

Generally, a treating physician's opinion is entitled to considerable weight unless there is good cause to reject those opinions. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). A treating physician's opinion will be accorded controlling weight if it is supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). However, the opinion of a treating physician regarding disability or inability to work may be discounted if it is unsupported by objective medical evidence, conclusory, or contrary to the

---

[2] To the extent that Plaintiff submits that the ALJ did not set forth substantial evidence to conclude that Plaintiff's seizures, vision problems, and depression were not severe, the court agrees with and adopts the arguments and record citations set forth in the Commissioner's memorandum of law (Dkt. 18 at 5-8) and finds that there is substantial evidence supporting the ALJ's findings on this issue.

9

evidence. Bloodsworth, 703 F.2d at 1240. In addition, when assessing medical evidence in a disability case, the ALJ is required to state with particularity the weight given to different medical opinions and the reasons therefore. Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987)(citation omitted).

The record shows that the ALJ mentioned the opinions of each of the above-named physicians in his decision denying benefits. In determining Plaintiff's RFC, the ALJ gave "great weight to the opinions of physicians having a treating relationship with the claimant." (T 28, 30) Further, the ALJ expressly noted that Drs. Nyako, Nornton, Janer, and another physician (Dr. Williams) "made the same restrictions" including no lifting of more than 25 pounds, no sitting or standing for prolonged periods, and no excessive walking. (T 26) The ALJ further found that Drs. Nornton and Janer (and other physicians Drs. Williams and Jackson) restricted Plaintiff from overhead reaching on a regular basis and no repeated bending, stooping or squatting. (Id.)

Notwithstanding these findings, Plaintiff contends that the ALJ improperly relied on opinions of non-treating physicians in lieu of the opinions Dr. Nornton (Plaintiff's treating physician), Dr. Nyako (his treating neurologist), and Dr. Janer (his treating rheumatologist), all of whom according to Plaintiff found him to be disabled. (T 167, 246-47, 303) A review of the record, however, indicates that while some of the physicians used the term

"disabled," their RJC assessments did not preclude all work activity but primarily ruled out prolonged standing and sitting and lifting more than 25 pounds. Those restrictions are not inconsistent with the ALJ's RFC determination.

### Dr. Nornton

In discussing the medical evidence the ALJ referred to the records of Christine Nornton, D.O. (Dr. Nornton), a family practitioner who treated Plaintiff for complaints of joint pain and right knee edema and opined that Plaintiff was disabled due to low back pain, muscle weakness, and bone spurs in his feet and recommended no sitting or standing for prolonged periods. (T 23, 246-47) After reviewing Dr. Nornton's more recent progress reports concerning Plaintiff, however, the ALJ noted that Plaintiff's recent visits indicated complaints of pain and weakness in the hands and that Plaintiff only needed to have his blood pressure checked. Plaintiff also reported taking all of his prescribed medications and using only natural supplements to help with his pain. (T 23, 339, 341) These findings by the ALJ demonstrate good cause to disregard any opinion as to total disability by Dr. Nornton. In any event, Plaintiff has not shown that the ALJ ignored any other RFC restrictions imposed by Dr. Nornton. In fact, the restriction as to prolonged sitting or standing was expressly included in the ALJ's RFC in adopting a sit/stand option where Plaintiff must be able to "change positions at will." (T 28)

Dr. Nyako

The ALJ observed that R.A. Nyako, M.D. (Dr. Nyako), who conducted a neurological examination of Plaintiff on September 25, 2001, found him to be disabled due to osteoarthritis of the spine and imposed restrictions of no lifting of more than 25 pounds, no sitting or standing for prolonged periods, and avoiding excessive walking. (T 22, 168-169)

It is not clear whether Dr. Nyako was a one-time examiner or a treating physician. However, even if he were a treating physician whose opinions were subject to the standard set forth above, the ALJ properly evaluated his opinions. The ALJ summarized Dr. Nyako's medical opinion as follows:

> On examination, his gait was normal, localized spasms on the right side of the neck and tenderness in the lower lumbar area were noted. He was unable to walk on his heels and there was some weakness noted in the hip flexors and dorsiflexion of the feet bilaterally. The claimant had a positive Tinel's sign at the left wrist and left elbow. Electromyography (EMG) was abnormal, consistent with cervical radiculopathy at C6 and C7, and greater on the right. Nerve Conduction Studies revealed left carpal tunnel syndrome and left cubital tunnel syndrome, and an Electroencephalogram (EEG) was normal. Magnetic resonance imaging (MRI) of the cervical spine revealed disc bulging and spondylosis at C5-6 and C7 levels. A MRI of the thoracic spine was negative, as was MRI of the brain.

(T 22)

Plaintiff has failed to point to any evidence that the ALJ disregarded any work-related restrictions imposed by Dr. Nyako.

Dr. Janer

The ALJ also referred to the opinion of Edgard Janer, M.D. (Dr. Janer), Plaintiff's treating rheumatologist, and noted that Dr. Janer determined that Plaintiff was disabled and was unable to sit or stand for long periods of time without motion, and could not bend, squat, or do any heavy lifting. (T 24, 303-304) According to the ALJ, Dr. Janer found that Plaintiff had decreased range of motion in his lumbar spine with frequent muscle spasms and severe neck and low back pain and that he occasionally required a cane for assistance and support.[3]

The ALJ noted all of these findings. As with Drs. Nornton and Nyako, Plaintiff has not shown that the ALJ ignored any of their work-related restrictions. Even though some physicians employed the word "disabled" in their reports, they did not preclude all work-activity and the restrictions imposed were not inconsistent with the ALJ's RFC assessment.

To the extent that the ALJ's RFC determination also rested on the opinions of a non-examining state agency consultant, David Langenbrunner, M.D. (Dr. Langenbrunner), who determined that

---

[3] Dr. Janer's assistant, H. Williams, D.O., also completed a questionnaire indicating that Plaintiff was disabled because of chronic cervical and lumbar pain and weakness in both lower extremities and could not lift more than 25 pounds and was unable to stand or sit for long periods of time. The ALJ noted these restrictions as well (T 24, 321)

13

Plaintiff had the RFC to perform light exertional work,[4] Plaintiff has not demonstrated that the treating physician opinions were inconsistent with that of any non-examining physician.

Accordingly, this issue does not entitle Plaintiff to relief.

**D.** Finally, in his Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence (Dkt. 13), Plaintiff argues that the record should be supplemented to include medical records obtained after the ALJ issued his final decision.

To obtain a remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative results; and (3) there is good cause for failure to submit the evidence at the administrative level. Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988)(citation and internal quotation marks omitted).

To justify a remand under Title 42, United States Code, section 405(g), the claimant must show that there is "good cause" for the failure to offer the evidence at the administrative level and that there is a reasonable possibility that the evidence would

---

[4] The ALJ altered Dr. Langenbrunner's RFC determination slightly to account for new evidence. (T 28) The ALJ stated: "In addition, based on new medical evidence, the undersigned adds the additional limitations of no repetitive bending, stooping or crouching, no overhead reaching, a sit/stand option and to avoid heights, balancing and dangerous or moving machinery." (Id.)

14

change the outcome   Cherry v. Heckler, 760 F.2d 1186, 1192 (11th Cir. 1985)(citations omitted) Good cause may exist where the evidence did not exist at the time of the administrative proceedings. Id. (citations omitted).

The records tendered by Plaintiff comprise the period between December 17, 2003 and December 2, 2004. (Dkt. 13, Exhs. A,B) and the ALJ's written decision is dated June 19, 2003.  Plaintiff contends that the medical records from the Veterans Administration (VA) show that he suffers from chronic depression, a severe impairment under the Act. Specifically, Plaintiff contends the VA records show that he was diagnosed with a major depressive disorder/anxiety disorder and with a Global Assessment of Functioning score of 50-52.[5]  They also establish, according to Plaintiff, that he has a history of childhood abuse and abandonment.

This court's review of the VA records submitted by Plaintiff confirms this information which is contained in a progress note dated September 29, 2004, more than one year after the ALJ's decision.  These notes also reflect that Plaintiff was started on

---

[5] "GAF" is an acronym for "Global Assessment of Functioning. Wind v. Barnhart, 2005 WL 1317040 at *2 (11th Cir. June 2, 2005).  GAF scores between 51 and 60 reflect moderate symptoms, including moderate difficulty in social, occupational or school settings. Id. at n.1.  GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. Diagnostic and Statistical Manual of Mental Disorders DSM-IV-TR at 30 (4th ed. 1994).

Mirtazipine, but discontinued it because it made him feel worse. However, the examiner noted that Plaintiff "refused all psychotropic medications at this time." (Dkt. 13 at 23) During that September 2004 visit, Plaintiff was well-groomed, cooperative, and showed no psychomotor agitation though his speech contained odd cadences and inflections. He denied any delusions or hallucinations. His insight and judgment were adequate. Plaintiff was directed to follow up with psychotherapy and to go to the emergency room for psychiatric emergencies. In a return visit on December 2, 2004, Plaintiff provided some information about childhood abuse but was primarily concerned with his peripheral neuropathy and neck tremors. He also reported poor sleeping problems and falling asleep at his computer during the day. Plaintiff rated his mood and anxiety at "5/10" (presumably a 5 on a scale of 1 to 10). (Id. at 26)

While conceding that the evidence is new and non-cumulative, the Commissioner opposes the motion to remand on the basis that it is not material to the Commissioner's decision because, at most, the evidence shows a worsening of Plaintiff's condition subsequent to the ALJ's decision and would not change the ALJ's RFC assessment that Plaintiff was capable of simple unskilled work during the period in question. (Dkt. 18 at 8-9)

In evaluating Plaintiff's claim of depression, the ALJ noted that "Dr. Warach found the claimant to be depressed during an

16

evaluation in July 2000, for which he was prescribed Zoloft.  In May 2002 Dr. Rayback recommended that the claimant seek a psychiatric evaluation because of his *reported* history of depression.  However, there is no indication that the claimant sought any mental health treatment."  (T 25)

None of the proffered records indicate that Plaintiff sought mental health treatment between September 17, 2001, the alleged disability onset date, and June 19, 2003, the date of the ALJ's decision finding Plaintiff not disabled.  Rather, they span a period of time significantly after the ALJ's decision. Additionally, none of the records provide work-related limitations due to Plaintiff's mental condition or provide an opinion as to how long the impairment has existed.  For these reasons, this court finds the proffered evidence falls short of the materiality requirement of 42 U.S.C. §405(g) and there is no reasonable possiblity that the additional evidence would alter the ALJ's findings concerning Plaintiff's application for disability benefits.  Therefore, the motion to remand will be denied.

## CONCLUSION

While concluding that remand for further fact-finding is necessary due to errors of law at the administrative level, this court expresses no views as to what the outcome of the proceedings should be.  At the reopened hearing, each party shall have the opportunity to submit additional evidence on the issues remaining

for determination.

Accordingly and upon consideration, it is **ORDERED** and **ADJUDGED** that:

(1) the decision of the Commissioner denying benefits is **REVERSED**; and this case be remanded for further administrative proceedings consistent with the foregoing discussion; and

(2) **Plaintiff's Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence** (Dkt. 13) **is DENIED**;

(2) the Clerk of Court enter final judgment pursuant to 42 U.S.C. § 405(g) and direct this case be closed as this is a "sentence four remand." See Shalala v. Schaefer, 509 U.S. 292, 303-04 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993).

**DONE AND ORDERED** in Tampa, Florida on this 25th day of August, 2005.

ELIZABETH A JENKINS
United States Magistrate Judge